UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Gregory Tywone Canty, ) | C/A No. 4:14-1044-JMC-TER |
| ) | |
| Plaintiff, ) | |
| ) | REPORT AND RECOMMENDATION |
| vs. ) | |
| ) | |
| Chief Michael Schwartz, Officer Lucy Perez, ) | |
| Mark Goude, ) | |
| ) | |
| Defendants. ) | |

## **PROCEDURAL BACKGROUND**

The Plaintiff, Gregory Tywone Canty, proceeding *pro se* filed this action under 42 U.S.C. § 1983[1] on March 20, 2014, alleging violations of his constitutional rights. Plaintiff filed an amended complaint on September 15, 2014. (Doc. #49). Based on the change of address Plaintiff filed with this court on May 11, 2015, he is no longer incarcerated. At all times relevant to the allegations in the complaint, Plaintiff was a pretrial detainee at the Georgetown County Detention Center ("GCDC"). Defendants filed a motion for summary judgment on March 13, 2015. (Doc. #90). Because Plaintiff is proceeding pro se, he was advised on or about March 16, 2015, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendants' motion for summary judgment could result in dismissal of his complaint. On May 26, 2015, Plaintiff filed a motion for extension of time until June 15, 2015, to respond to the motion for summary judgment. This motion was granted on May 26, 2015. Plaintiff has not filed a response.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

# DISCUSSION

## ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The Plaintiff alleges a constitutional violation due to the conditions of confinement at the GCDC. Specifically, Plaintiff alleges as follows in the amended complaint, quoted verbatim, in part:

1. Mold

> Plantiff's cell, dayroom area, and shower(s) area(s) is contaminated with mold. Plantiff's had problems with itchy skin, nose running, eyes watering, wheezing, and allergic reaction to mold in which plantiff had to be treated at medical. Plaintiff has been to medical twice and was charged by the Detention center both times even though they knew his injuries were not plantiff's fault. Plaintiff has pointed out mold to staff members and wrote Chief Schwartz without a response. Defendant Schwartz has clearly violated plantiff's Eigth Amendment of the United States Constitution/Cruel and Unusual Punishment because as Chief/Administrator he governs facility and after numerous complaints/grievances; facility is still contaminated with mold, and Defendant Schwartz has been negligent towards plantiff's health, safety, well being, and reasonable care in which he has an obligation while plaintiff is in his custody.

2: Hazzardous Paint Fumes

> Plantiff was locked in his cell in February when Mark Goude and an inmate helper came upstairs in front of plantiff's cell and spray painted the ceiling right next to plantiff's cell to cover up mold. Officer Robinson was working the Unit and when she came in the Unit she immediately noticed how strong the fumes were. The fumes were too strong for a closed in environment. Two months later around the end of April, Mark Goude came to H-Block and looked in all cells due to excessive mold complaints. When he got to plantiff's cell (H-9) plantiff showed him mold along the edge of the walls and center of ceiling in the presence of Officer Washington and Roomate(s) Jamar Stewart and Anthony Scanes. Mark Goude stated that it wasn't mold and it just needed to be painted over. He stated that he didn't have his glasses nor did he go get them. About a week

later on exactly May 8, 2014, plantiff suffered injuries from mold. Plantiff cleaned mold after breakfast with toilet tissues and water. Plantiff went back to sleep and woke up with a swollen face. Most noticeably lips and under eyes due to allergic reaction from mold. Medical (nurse Susan Lopaz) treated plantiff in presence of Defendant Schwartz. Medical records can corroborate plantiff's injuries. . . . Mark Goude's been negligent by not properly cleaning mold and caused plantiff cruel and unusual punishment which violates the Eighth Amendment of the United Sates Constitution by spray painting hazardous fumes in closed in area without ventilation.

3. Cruel and Unusual Punishment

Plantiff Gregory Tywone Canty was housed at the Georgetown County Detention Center during the ICE STORM that knocked out the power from 2-12-14 to 2-15-14. GCDC has a generator that only power flood lights and lights in the officer's station. Plantiff was left in his cell in the freezing cold in a room with water that leaked in all over the floor against his will, which wasn't a justifiable act. Plantiff asked defendant Officer Lucy Perez for an extra blanket and a mop bucket to get water off of floor but was constantly denied. . . .

4. Hazardous Trays

Plantiff has been "forced" to eat out of trays that contain old smelly water on the inside. Plantiff wrote Defendant Schwartz and never received a response. As of late Defendant Schwartz has had Mark Goude drill holes in trays instead of purchase new trays. Trays are very old and unsanitary and if opened would contain mold since it's damp inside. The action(s) of defendant(s) Chief Schwartz and Mark Goude have violated plantiff's Eigth Amendment Right to the U.S. Constitution.

5. Witholding/ Tampering of Legal Mail

Plantiff's legal mail is being witheld/tampered with by GCDC. Plantiff sent letter to attorney on March 28, 2014 and Attorney J. David Banner didn't receive letter until April 10, 2014. Plantiff has written to defendant Schwartz who's stamp appears on the back of any outgoing mail without a response. On Sunday May 19, 2014 around 1:30 A.m Officer McAllister came to plantiff's cell and gave him legal mail from attorney postmarked May 12, 2014. Plantiff wrote Defendant Schwartz and Captain Wineglass. Defendant Schwartz didn't respond but Captain Wineglass did and said she'd

>   address it. Plantiff spoke with Lt. Anderson on 5-19-14 and she told
>   plantiff she saw plantiff's letter just sitting in main control and she
>   sent it to plantiff. As jail Administrator Chief Michael Schwartz and
>   staff has violated plantiff's attorney/client privilege.

(Doc. #49)(Errors in original).

## **STANDARD FOR SUMMARY JUDGMENT**

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the

fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).  Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any."  Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## **LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES**

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment.  Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power

5

>to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

Since the Plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, Plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

6

## AFFIDAVITS

In support of the motion for summary judgment, Defendants submitted the affidavit of Michael A. Schwartz (Schwartz) who attests that he is employed by the Georgetown County Sheriff's Office and assigned to the GCDC where he holds the rank of chief and serves as the administrator of the jail. (Doc. #90-2). Schwartz states that he is aware that Plaintiff and other inmates have made complaints for what they allege to be mold. Id. When an inmate complains to GCDC personnel, a Maintenance Repair Order is created for someone in the maintenance department to inspect the cell. The maintenance staff has the necessary cleaning supplies and addresses any issues upon notification of the complaint. Id. Schwartz was made aware by Mark Goude, who served as the Maintenance Director at GCDC, that inmates had used pencils to color the walls and scraped the paint off the walls to create the appearance of mold and that this condition had been observed in Plaintiff's cell. Id. Certain areas that had been damaged were repainted but Schwartz is not aware of any complaints being made concerning paint fumes. Id. With regard to the complaint concerning the food trays, the food trays are pre-rinsed, washed, rinsed, sanitized, air-dried and inspected to make sure they are in the appropriate condition to meet DHEC guidelines. Id. If a tray is reported to or discovered by the food service staff to have an issue, it is removed from use and replaced with a new one. As to the size of the generator, GCDC took action to address any issues brought on by the ice storm in February 2014, and Schwartz is not aware of any inmates being injured during the ice storm. Id. During Plaintiff's detention at the GCDC, Schwartz is not aware of Plaintiff suffering any injuries resulting from the issues complained of in his complaint or amended complaint. Id.

Defendants submitted the affidavit of Cecil Middleton (Middleton) who attests that he is employed by Southern Health Partners as an LPN, and a Medical Team Administrator assigned to

GCDC. (Doc. #90-2). Middleton reviewed Plaintiff's medical records maintained by Southern Health Partners during Plaintiff's detention at GCDC and attached a true and accurate copy of the records from January 2014, to the date of the affidavit as Exhibit A. Id. With regard to Plaintiff's allegations that he suffered headaches, shortness of breath or other issues as a result of "mold" or unsanitary conditions, Plaintiff's medical records do reflect that he complained of these issues, but these appear to be nothing more that Plaintiff's subjective complaints and nothing in the medical records supports his claim. Id. After a sick call request by Plaintiff dated February 15, 2014, complaining of trouble breathing, itching and headaches, he was seen on February 16 and his upper respiratory symptoms were checked. Id. A review of the records shows that all clinical data was within the normal limits, and Plaintiff exhibited non-labored respirations, clear lung sounds, no pain upon palpation of his sinuses, and no redness or swelling. Id. The medical records do not show any additional complaints until May 8, 2014, when he complained of swelling of his lip and eyes alleging to have had contact with mold while cleaning. Id. Plaintiff was seen in the medical department and an examination noted that any swelling had decreased. Id. However, Plaintiff was given Benadryl and no swelling was noted when seen the following morning during the medication pass. Id. Plaintiff was advised to notify medical of any problems and made no additional complaints concerning this issue. Id. Plaintiff was next seen in medical on October 8, 2014, for complaints of nausea and vomiting. Plaintiff's vital signs were checked and were within the normal limits. Id. He was given medications and monitored throughout the day. Id. At the end of the day, Plaintiff was observed resting comfortably with no other instances of vomiting and had made no complaints since October 8, 2014. Id. On August 1, 2014, and September 26, 2014, Plaintiff completed TB screening questionnaires and did not indicate to the medical staff any medical conditions he was experiencing or had recently experienced. Id. Plaintiff was last seen on December 21, 2014, for a complaint of

an abscess on his gum that started that day. Id. Plaintiff was given medication and was not seen by medical department on any other issues. Id.

## CONDITIONS OF CONFINEMENT

As discussed, Plaintiff alleges constitutional violations based on black mold in the facility, the food trays are hazardous due to having "smelly water" on the inside, tampering/withholding of his legal mail, and that the generator is too small since there was no running heat in his cell during the ice storm in February 2014.

Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441 U.S. at 535 n.16. To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)). Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916 (1995). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process--even though the

conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Further, the Plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381.

Plaintiff has not presented evidence to create a genuine issue of material fact as to whether he was denied the minimal civilized measure of life's necessities, or that the named defendants engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result." See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Plaintiff has not shown that he was deprived a "basic need" and that these deprivations were attended by deliberate indifference on the part of the Defendants. Strickler, supra Further, Plaintiff has failed to show any express intent on the part of the Defendants to punish him. Based on the affidavits submitted, the Defendants assert there is/was no mold problem in Plaintiff's cell but that inmates used pencils to color the walls and scraped them to create the appearance of mold. While Plaintiff has alleged that the mold makes him sick, he was examined in medical due to complaints but was not found to have any problems with his breathing, lung sounds were clear, and there was no pain upon palpation of his sinuses and no redness or swelling. He complained once of swelling in his lip and eyes alleging he came in contact with mold. However, the medical records reveal that any swelling had decreased, but he was given a Benadryl. There was no further complaints of swelling or complaints concerning this issue.

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal

10

courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any detainee, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra.  As previously discussed, the Supreme Court noted that the administration of detention facilities is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the facility and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

The Supreme Court recognized that punishment prohibited by the Constitution does not result from negligence on the part of prison officials.  The Supreme Court stated this principle and established the appropriate standard in Whitley v. Albers, 475 U.S. 312 (1986).

> [t]o be cruel and unusual punishment, conduct that does not purport
> to be punishment at all  must involve more than  ordinary lack of due
> care for the prisoner's interest or safety.
> . . . It is obduracy and wantonness, not inadvertence or error in good
> faith, that characterize the conduct prohibited by the
> Cruel and Unusual Punishments Clause. . . . Id., at 1084.

Plaintiff has failed to present evidence  that the Defendants wantonly and obdurately failed to take precautions for his safety or showed deliberate indifference to a specific known risk of harm. Accordingly, it is recommended that Defendants' motion for summary judgment be granted with respect to Plaintiff's allegations of conditions of confinement.

As to Plaintiff's allegations of withholding or tampering with his legal mail, the claim fails.

11

Plaintiff merely maintains that his legal mail should have gone out earlier than it did and that he did not receive a legal letter postmarked May 12, 2014, until May 19, 2014. The Plaintiff's allegations that the Defendants interfered with his legal mail fail to state a claim because he has not shown any actual injury. To state a claim that a delay or failure in delivering or receiving legal mail violated an inmate's constitutional rights, the prisoner must allege facts showing that "the delay or failure in delivering his legal mail deprived him of meaningful access to the courts." White v. White, 886 F.2d 721, 723 (4th Cir.1989). Accordingly, the plaintiff must show that the alleged "interference with his legal mail caused him to suffer actual detriment to a legal proceeding." Williams v. Crawford, 339 F. App'x 288, 289 (4th Cir.2011) (citing Lewis v. Casey, 518 U.S. 343, 349–51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (holding that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation). Further, to the extent Plaintiff has intended to imply that the alleged conduct with respect to his legal mail has affected his access to the courts, Plaintiff has provided no evidence, or even argument, to show that any problems he is allegedly having with his legal mail has prejudiced him in any court proceeding. Magee v. Waters, 810 F.2d 451, 452 (4th Cir.1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]; Hause v. Vaught, 993 F.2d 1079, 1084–1085 (4th Cir.1993); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996) [Dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury]. Therefore, it is recommended that Defendants' motion for summary judgment be granted with respect to this claim.[2]

---

[2] As to any allegations involving the grievance procedure, the claim fails as there is no constitutional right to participate in grievance proceedings. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

## **QUALIFIED IMMUNITY**

Defendants argue that they are entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982).

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818. In a discussion of qualified immunity, the Court of Appeals for the Fourth

Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that the Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that the Defendants' motion for summary judgment be granted on this issue.

## **SUPERVISORY LIABILITY**

Viewing the Complaint in the light most favorable to Plaintiff, and liberally construing the Complaint, Plaintiff has failed to plead sufficient allegations to state a claim against Defendants. If Plaintiff has named any Defendant due to his/her supervisory positions, the claim fails. Because there is no doctrine of respondeat superior in § 1983 claims, Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, see Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994) (setting forth elements

necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability under § 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). As discussed above, Plaintiff has failed to plead facts sufficient to establish that Defendants are liable under a theory of supervisory liability.

## PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## CONCLUSION

The Plaintiff has failed to show that the Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by the Defendants (document #90) for summary

judgment be GRANTED IN ITS ENTIRETY.

       IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.


       Respectfully Submitted,


       s/Thomas E. Rogers, III
       Thomas E. Rogers, III
       United States Magistrate Judge

June 16, 2015
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

16